**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 12, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

SEAGRUM BERNARD FORD,

Defendant - Appellant.

No. 05-4167
(D.C. No. 2:04-CR-117-TS)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **McKAY**, and **LUCERO**, Circuit Judges.

Seagrum Bernard Ford appeals his conviction for three counts of

distribution of cocaine base and one count of possession with intent to distribute

cocaine base, all in violation of 21 U.S.C. § 841(a)(1), and one count of unlawful

possession of a firearm by a person who is addicted to a controlled substance in

violation of 18 U.S.C. § 922(g)(3), pursuant to a conditional guilty plea. On

appeal, he argues that the district court erred by denying his request for a

_____

[*] The case is unanimously ordered submitted without oral argument
pursuant to Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). This order and
judgment is not binding precedent, except under the doctrines of law of the case,
res judicata, and collateral estoppel. The court generally disfavors the citation of
orders and judgments; nevertheless, an order and judgment may be cited under the
terms and conditions of 10th Cir. R. 36.3.

<u>Franks</u> hearing, and by denying his motion to suppress evidence. Because we hold that a <u>Franks</u> hearing was not necessary, and that probable cause existed to justify the search warrant, we **AFFIRM**.

In February 2004, a confidential informant introduced Sandy Police Detective Michael Ikemiyashiro, a five-year veteran of the police department currently assigned to the Salt Lake Area Gang Project unit, to Seagram Bernard Ford. Detective Ikemiyashiro was interested in meeting Ford because of his suspected membership in the "Original Swamp Compton Crips," a violent criminal street gang primarily based in Los Angeles County, California. Following their initial introduction, Detective Ikemiyashiro purchased cocaine base from Ford on three separate occasions. In total, Ford sold Detective Ikemiyashiro approximately 15 grams of cocaine base.

Once Detective Ikemiyashiro began purchasing drugs from Ford, the Sandy Police Department placed Ford under constant surveillance in the hopes of finding his "stash house." Although they were unsuccessful in locating the stash house, the police uncovered a number of connections linking Ford to Suliana Heimuli and her residence. Heimuli, they learned, was Ford's girlfriend, and, on two separate occasions, Ford was identified as driving cars registered in her name. Ford was also living in Heimuli's house.

On February 20, 2004, approximately two weeks after their initial introduction, Detective Ikemiyashiro met Ford in a Lowe's Home Improvement store parking lot located in Murray, Utah, to purchase cocaine base. Ford did not arrive alone. Accompanying him were Heimuli, Anthony Glenn Johnson, Jr., and Juan Alberto Serrantos. After completing the transaction, Detective Ikemiyashiro asked Ford whether he could purchase additional cocaine. Ford responded that he could not do so immediately, but agreed to meet Detective Ikemiyashiro later that day to sell him more cocaine.

That afternoon, Ford spoke with Detective Ikemiyashiro briefly by telephone. They agreed to meet in a Taco Bell parking lot in West Valley City, Utah, at which time Ford indicated he would have the drugs Detective Ikemiyashiro requested. Surveillance showed that after leaving the Lowe's parking lot, the only stops Ford made were at the Salt Lake City International Airport, a gas station, and Heimuli's residence – which was his final stop before he arrived at the pre-arranged Taco Bell. When Ford, who was now accompanied by only Johnson and Serrantos, arrived at Taco Bell, police officers stopped his vehicle. Ford, Johnson, and Serrantos were then immediately arrested. During a routine inventory search, the police found one ounce of cocaine base concealed in Ford's "buttocks."

Detective Ikemiyashiro then sought a search warrant for Heimuli's residence – in which Ford was living – for Heimuli herself, for anyone found at

the residence at the time of the search, and for the two vehicles that police observed Ford use to complete his drug deliveries. On the basis of an affidavit prepared by Detective Ikemiyashiro, the state judge issued a nighttime, no-knock warrant for the persons and properties requested. As the police searched Heimuli's residence on execution of the warrant, they found a loaded Glock .45-caliber pistol under Ford's mattress, approximately 56.9 grams of cocaine base, and $2,080 in cash, $300 of which was the money Detective Ikemiyashiro used to purchase cocaine base earlier in the day.

Following the search, Ford was indicted on three counts of distribution of cocaine base and one count of possession with intent to distribute cocaine base, all in violation of 21 U.S.C. § 841(a)(1), and one count of unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(3). Prior to trial, Ford filed a motion to suppress the evidence discovered as a result of the warrant because the affidavit used to procure the warrant contained false or reckless misstatements thus entitling him to a Franks hearing. In the alternative, Ford argued that the affidavit on its face failed to support a finding of probable cause. The district court denied his request for a Franks hearing, and denied his motion to dismiss. Ford filed a timely appeal.

In reviewing the denial of a motion to suppress, we accept the factual findings of the district court unless they are clearly erroneous. United States v. Bradford, 423 F.3d 1149, 1156 (10th Cir. 2005). The ultimate determination of

reasonableness under the Fourth Amendment, however, is a question of law which we review de novo. Id.

First, Ford argues that his Fourth Amendment rights were violated because the district court denied his request to hold a Franks hearing. In Franks v. Delaware, 438 U.S. 154, 155-56 (1978), the Supreme Court held that, in limited circumstances, a defendant is entitled to an evidentiary hearing to determine whether the warrant was issued in reliance on a deliberately or recklessly false affidavit. In order to justify a Franks hearing, the defendant must first establish by a preponderance of the evidence that officers intentionally or with reckless disregard for the truth omitted material information from, or included false information in, the affidavit. United States v. Tisdale, 248 F.3d 964, 973 (10th Cir. 2001). A defendant cannot rely on conclusory statements, but rather must support his position with "affidavits or sworn or otherwise reliable statements of witnesses . . . or [in the case that such cannot be provided] their absence [must be] satisfactorily explained." Franks, 438 U.S. at 171. If a defendant meets this burden, we review the affidavit as if the omitted information had been included (or, conversely, as if the erroneous information had not been included) and then determine whether the affidavit, thus construed, meets probable cause standards. Id.

The affidavit supporting the warrant application did not include a statement by Ford to Detective Ikemiyashiro that Ford's "guy or dealer was around and that

they could all meet at the Taco Bell to complete the ounce transaction they had agreed on earlier in the day." Ford argues that omission of this statement creates the false impression that he picked up the drugs from Heimuli's residence. However, Ford has not presented any evidence that Detective Ikemiyashiro omitted the statement intentionally or with reckless disregard for the truth. Tisdale, 248 F.3d at 973. As such, he is not entitled to a Franks hearing.

Further, even if the statement was included, the affidavit, so construed, contained sufficient evidence to establish probable cause. Probable cause exists when the issuing judge has a substantial basis for concluding that "given all the circumstances set forth in the affidavit before [the issuing magistrate or judge], including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983) (internal citations omitted); see also United States v. Kennedy, 131 F.3d 1371, 1378 (10th Cir. 1997) (internal citation omitted). When police seek a warrant to search the home of an individual suspected of drug-related crimes, we have required that a sufficient nexus exist between the defendant's drug activities and his home to support a finding of probable cause. United States v. Lalor, 996 F.2d 1578, 1582-83 (10th Cir. 1993).

The affidavit contained the following uncontested facts: (1) Detective Ikemiyashiro had participated in three separate drug transactions with Ford over a

two-week period; (2) Heimuli was Ford's girlfriend during the relevant time period; (3) Ford's driver's license listed Heimuli's home address as his personal address; (4) Ford lived in Heimuli's residence and used her cars to make drug transactions during the relevant time period; (5) Johnson also slept at Heimuli's residence for three weeks prior to the date the warrant was issued; (6) on the day of Ford's arrest, Ford told Detective Ikemiyashiro that he needed more drug base before he would be able to sell him the additional cocaine; (7) Heimuli's home was Ford's last stop before he arrived at the predetermined Taco Bell to meet Detective Ikemiyashiro; and (8) after Johnson was arrested, Johnson told police that Ford stored a pistol under a mattress in Heimuli's residence.

None of the facts establishing the nexus between Ford's drug-related activity and the property identified in the search warrant are contradicted by Ford's statement that he was obtaining the drugs from his dealer. Further, they overwhelmingly give rise to a finding of probable cause.

Accordingly, we **AFFIRM** the district court's denial of Ford's request for a <u>Franks</u> hearing, and **AFFIRM** the district court's denial of Ford's motion to suppress.

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge